[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This petition first came to the court by virtue of a complaint dated May 10, 1999 and returnable June 8, 1999 in which complaint the plaintiff petitioner in the prayer for relief sought a dissolution of the marriage of the parties, custody of the minor child, support of the minor child, visitation of the minor child, a property settlement under § 46b-81
of the Connecticut General Statutes, an allocation of debts, and such other relief as the court deems fair and equitable.
Accompanying the complaint was a motion for custody, support and visitation and debt allocation pendente lite which motion was acted on by the court, Mihalakos, J., on June 29, 1999. A motion for exclusive possession pendente lite accompanied the complaint. This motion was controlled by the order of Mihalakos, J., dated June 29, 1999. The usual notice accompanied the filing of the complaint.
The defendant appeared by counsel by an appearance filed on May 24, 1999 and on the same date filed an answer to the complaint and a cross complaint, and in the cross complaint the defendant sought a dissolution of the marriage, custody of the minor child, support for the minor child, alimony, assignment of plaintiffs interest in the home at 97 Hunter's Ridge in Westbrook, Connecticut, an equitable property settlement, an allowance to defend, pension division, allocation of liabilities and such other orders as the court deems equitable and proper.
The defendant also filed a pendente lite motion for alimony, custody, child support, an allowance to defend dated May 21, 1999, which motions were again controlled by the order of Mihalakos, J., on June 29, 1999 including a referral of the matter to Family Services for mediation on the issue of custody.
The defendant filed a motion for exclusive use and possession of the family residence dated May 21, 1999, which again was affected by the stipulation and order of the court on June 29, 1999.
On June 29 1999 each of the parties filed a financial affidavit setting forth their financial circumstances and assets.
On July 2, 1999 the defendant moved for the appointment of an attorney for the minor child pendente lite, and as a result thereof Attorney Sarette Williams was appointed as counsel for the minor child.
On August 11, 1999 a stipulation was filed with the court, the parties agreeing thereto along with counsel and the attorney for the minor child having to do with custody and visitation. CT Page 13817
On September 21, 1999 certain motions were filed which resulted in a pendente lite stipulation dated October 4, 1999 as concerns various financial issues. In that pendente lite stipulation dated October 4, 1999 in part it provided for child support in the amount of $200.00 per week from the plaintiff to the defendant.
A further pendente lite stipulation dated November 15, 1999 treated compliance with discovery and disclosure and allied matters.
On March 27, 2000 a certain pendente lite stipulation was accepted, the stipulation being dated March 22, 2000 and approved by the court, Martin, J.
The March 22, 2000 pendente lite stipulation concerned itself with income tax matters, dependency exemption, and in addition thereto terms and conditions with regard to permitting the plaintiff petitioner to refinance the outstanding encumbrances on the real estate known as 97 Hunter's Ridge Drive in Westbrook, Connecticut.
On October 18, 2000 and October 24, 2000 the plaintiff and the defendant with their respective attorneys and witnesses appeared before the court and the matter was heard to a conclusion.
The Court makes the following findings of fact.
The defendant's maiden name was Annlouise Morgan.
The parties were joined in marriage on August 1, 1987 in the Town of Waterford.
Both parties have resided in Connecticut for more than one year prior to the bringing of the instant complaint.
Neither party has been the recipient of welfare or assistance from the State of Connecticut or any town, city or municipality or subdivision thereof
There is one child born issue of this marital union, Noah J. Hallisey, born September 28, 1996.
The plaintiff testified that the marriage has broken down irretrievably with no reasonable prospect for reconciliation. The plaintiff sought counseling prior to the initiation of the petition on his own.
The plaintiff is employed at Electric Boat as a mechanical engineer. The plaintiff designs components and parts incident to his employment CT Page 13818 duties, he writes specifications, makes calculations and evaluates test results. The plaintiff works a minimum of 40 hours a week, he is privileged to have a flexible work schedule and may vary the same.
The plaintiff indicated that he is in a position where he can take off from his employment if he is so disposed every Tuesday and that he can adapt his work and his hours mindful of ongoing daycare expenses which were incurred incident to the one minor child.
The plaintiff apparently enjoys his son and having a proper relationship with him.
The plaintiff has performed custodial duties with the child including having the child with him for one three-day period when the defendant was not available.
The plaintiff takes the child on day trips, outings. On one occasion the plaintiff and the child visited Lake Compounce.
The plaintiff testified that the defendant voluntarily left the family residence located at 97 Hunter's Ridge Drive in Westbrook, Connecticut, which is a cape-type residence located on a cul-de-sac. This home was purchased in the fall of 1995.
The defendant now lives in an apartment.
The plaintiff is extremely desirous of being able to keep and maintain the home which he characterizes as being in a lovely setting which the minor child enjoys.
The plaintiff and the defendant had previously owned a home on Ocean Avenue in New London, and incident to the Ocean Avenue home, the plaintiff had originally put down $6,000.00. The Ocean Avenue. home was purchased in 1987 at a price of $96,000.00. That home was subsequently sold in 1995. The net proceeds received as concerns the sale of the Ocean. Avenue home approximated $9,000.00.
The down payment on the home in Westbrook was $42,000.00. The plaintiff took an in service withdrawal of $20,000.00 from his then existing account incident to his employment and a second loan of $12,000.00 from his 401K incident to the Westbrook purchase.
The defendant contributed between $7,000.00 and $9,000.00 as concerns said residence.
The in service loan, according to the testimony, has been repaid. CT Page 13819
The defendant left the marital residence in August of 1999.
The parties were married for nine years prior to the birth of the child Noah.
As between the plaintiff and the defendant, the plaintiff apparently ran the financial aspects of the parties in the main.
The plaintiff established an account into which all of his earnings were funneled. he defendant had a small separate account.
The plaintiff paid all of the expenses relative to the home.
The plaintiff was desirous of trying to save money for the future.
The plaintiff encouraged the defendant to put more money into her 401K.
The defendant recently was offered a new position, which she was not inclined to accept. This new position would have resulted in a 30% increase in her periodic compensation.
The defendant instead took a lesser position. The plaintiff has contributed to his 401K since the fall of 1985. The defendant has not contributed anything to the plaintiffs 40 1K,
Some of the plaintiffs funds incident to his plan are in a frozen or quasi-frozen status in terms of instant availability.
On the date of the service of the complaint in this petition May 10, 1999, the value of the plaintiffs 401K was $236,000.00.
It was apparently the defendant's position that the plaintiff put too much emphasis on saving money and financial husbandry.
The plaintiff apparently was fairly adamant with regard to trying to get the defendant to be more helpful in the financial security arena.
For the 1999 income tax liability, the plaintiff filed separately. Incident to his testimony, the plaintiff stated to the court that he does not make any request for alimony to himself.
The plaintiff first sought marriage counseling in March of 1999, which was shortly prior to the initiation of the pending petition.
The principal marital problems appear to be a divergence of views in CT Page 13820 matters of finances.
The plaintiff, as indicated, feels that the marriage has irretrievably broken down and the plaintiff felt that a mutual decision was made as of April 1999 as concerns proceeding on the divorce petition.
Apparently the plaintiff and the defendant had had prior discussions with regard to he possibility of a dissolution of the marriage.
These discussions apparently began in early 1999.
The defendant felt that the plaintiff may have been immoderate in his consumption of alcohol and abused the same.
The testimony of the plaintiff was to the effect that he had a few beers occasionally.
The plaintiff, as indicated, sought counseling with a counselor in the Town of Old Saybrook. He saw the counselor on and off for about six months.
The plaintiff indicated that he accepts some degree of blame for the irretrievable breakdown.
The plaintiff felt that he could have spent more time with his spouse and that perhaps he was too work ethic oriented. The plaintiff has been at Electric Boat for over 15 years.
At the time of the marriage of the parties the plaintiffs earnings at Electric Boat were in the neighborhood of about $25,000.00 a year. In 1999 his earnings were $59,350.00 according to his testimony; in 1998, approximately $57,000.00; in 1997 approximately, $52,010.00.
During the last three years the defendant's earnings have been about $25,000.00 annually.
The plaintiffs participation in his 401K is of a voluntary nature.
The plaintiff made mention to a certain 16 foot boat that he owns, which he originally valued at $2,500.00. It has a motor and a trailer.
He mentioned a motorcycle, which he represented was worthless.
He valued his Toyota motor vehicle at $12,000.00.
He indicated that there would be no bonus at the end of this year. CT Page 13821
The monthly mortgage payments on the Westbrook property are to the amount of $1,293.37. The mortgage refinance was occasioned in March of 2000.
The court has been asked to judicially notice the pendente lite stipulation between the parties of March 22, 2000, and the same is set forth herewith verbatim.
The parties in the above referenced matter hereby agree and stipulate to the following:
 1. The Plaintiff and Defendant shall file their 1999 Federal and state income tax returns separately. For tax year 1999, the Defendant shall be entitled to claim the minor child, Noah Hallisey, born September 28, 1996, as a dependency exemption and the Plaintiff shall be entitled to claim the mortgage interest deduction.** the exemption for the child for year 2000 and thereafter will be decided as part of the dissolution action.
 2. In order to permit the Plaintiff to refinance the present outstanding mortgage in the approximate amount of $142,287.00, together with the home equity loan in the approximate amount of $6,767.00 out of joint names into the Plaintiffs name solely, the Defendant agrees to execute a Quit Claim Deed transferring the real property located at 87 Hunters Ridge Drive, Westbrook, CT to the Plaintiff. By taking such action, the Plaintiff and Defendant agree that the Defendant is not waiving/releasing any and all claims to said property she may have, including but not limited to, the equity in the house and property, as she deems necessary and/or appropriate and said claims shall be addressed within the pending dissolution of marriage action.
 3. Consistent with the October 4, 1999 stipulation and resulting court orders, the Plaintiff shall pay, assume, and hold the Defendant harmless from the mortgage(s), taxes, insurance and carrying costs associated with the residence located at 97 Hunters Ridge Drive, Westbrook, Ct.
 4. Upon court approval of this stipulation, the CT Page 13822 Defendant's counsel shall turn over to Plaintiffs counsel the heretofore stated Quit Claim Deed, together with the State of Connecticut and Westbrook real estate conveyance tax forms, which the Plaintiff shall cause to be recorded for the sole purpose of the heretofore stated refinancing. In the event the plaintiff does not proceed with said refinance on or before March 24, 2000, the Plaintiff shall not record said documents, they shall become null and void, and the property shall remain in joint names.
 5. Upon court approval of this stipulation, the Defendant's counsel shall turn over to Plaintiffs counsel a Release of Lis Pendens which shall be recorded by the Plaintiff only if he proceeds with the heretofore stated refinancing on or before March 31, 2000. Additionally, the Defendant's counsel has executed a new Notice of Lis Pendens, which will be turned over to Plaintiffs counsel and Plaintiffs counsel shall immediately record the same after the mortgage refinance.
 6. Other than as specifically stated above, the Plaintiff shall not sell, transfer, pledge, hypothecate or encumber the real property located at 97 Hunters Ridge Drive, Westbrook, CT.
It is the position of the defendant that the recent refinancing of the Westbrook property has had the effect of reducing the equity therein, a portion of which may have been used by the plaintiff incident to the purchase of a motor vehicle.
The court was then asked to accept an out of order witness, one Sarah Avallone, a licensed child social worker, who has been engaged in child care and evaluation since the early 1980's.
Her qualifications were stipulated to by all counsel.
The attorney for the minor child, Attorney Williams, contacted the witness Avallone for the purpose of an evaluation. The attorney for the minor child met twice with the minor child and with the plaintiff and the defendant.
Concern was expressed to the court as concerns the child Noah spending as much as 40 hours a week in daycare. The child apparently looks to the defendant mother primarily, and the witness Avallone indicated that 40 CT Page 13823 hours a week for this 4 year old boy was, in her opinion, too much at the present time.
The witness Avallone however indicated that there was a good solid relationship between the child and the plaintiff, his father.
The witness Avallone indicated that the defendant had never complained to her as concerns any alcohol-related problems on the part of the plaintiff. The witness Avallone described the plaintiff as an appropriate competent parent who desired quality time with the child. The reduction of the amount of time spent in daycare by the child Noah was the principal and primary concern of the witness Avallone.
Incident to his employment duties, the plaintiff on occasion is required to travel. In the not too distant past he has been required to travel twice to California on job-related obligations.
The plaintiff has a bachelor of science degree in engineering, a further degree in diesel engineering. The plaintiff indicated that he hoped and planned to provide for [us minor son's college education. He understood that the court could not mandate that absent a written agreement by both parties.
The plaintiff acknowledged that he was earlier one week behind in support payments.
The plaintiff acknowledged that the defendant mother is a suitable parent. The plaintiff indicated that he has cared for the child through a variety of circumstances including sickness. Both the plaintiff and the defendant participated in seeing that the child received proper medical attention if the same was required.
As earlier indicated and reference being made to the pendente lite stipulation dated March 22, 2000 the refinancing required the approval of the defendant.
The cost of the refinancing as concerns closing costs, points, and matters of like nature, was in the nature of approximately $7,000.00. There were manifestly certain advantages to the defendant by virtue of the refinancing, having in mind that she was totally relieved of any mortgage obligation to a lending institution whereas before the refinancing on both the first mortgage and a home equity loan she had been a joint obligor. Clearly, this was a benefit to her.
It was indicated by the plaintiff that the defendant was not desirous of participating in marriage counseling. CT Page 13824
The plaintiff told the defendant that the problems that existed in the marriage were not insurmountable. It was the position of the plaintiff that if the defendant had agreed to counseling that the marriage might have been saved.
Reference being made to the deposition of the defendant, her attitude apparently was to the effect that there was a lack of respect accorded to her and the plaintiffs attitude was a controlling one.
The defendant apparently made no reference to any problems with regard to the immoderate or improper use of alcohol in her deposition.
One item of contention apparently was the size of the monthly phone bill; on occasion $139.00. The plaintiff felt that he was more financially conservative. At the present time he speaks with his minor son every evening by phone.
The testimony indicated that the value of the plaintiffs SSIP about five months nor to the dissolution papers being served was approximately $229,092.00.
As indicated, the plaintiff acknowledged being one week in arrears as to support which he attributed to his being on vacation. Any such deficiency has now been cured.
The plaintiff testified that he did not take his minor son to see his father due to the attitude and posture of the defendant.
Again, the plaintiff indicated a willingness to fund the child's higher education. The court indicated to the parties that this of course would have to be a mutual agreement in writing in order for the court to consider it.
The defendant apparently was desirous of having the Westbrook home sold and the proceeds apportioned and the defendant feels that the refinance significantly reduced the net equity of the property.;
The plaintiff receives quarterly statements from General Dynamics, his employer. He deposits approximately 9% of his periodic compensation into his SSIP.
The plaintiff is agreeable to the eight items of personalty that the defendant wants from the home premises and the parties stipulated thereto. CT Page 13825
The defendant's mother Louise Morgan of Waterford testified in the proceedings. She testified that she has on various and sundry occasions cared for the minor child Noah and that that relationship has gone well. The defendant lived with this witness for three months after the defendant vacated the Westbrook property.
This witness testified that the plaintiff discussed having an alcohol problem with her. This was incident to a conversation that occurred on Mother's Day in 1999.
This witness Louise Morgan is retired as is her husband; however, they are both willing and have in the past helped and assisted with regard to the care of the minor child Noah.
This witness Louise Morgan testified that as between having the minor child Noah in daycare or with relatives, that daycare was preferred.
The witness Louise Morgan testified that she holds the plaintiff father in high regard.
This witness Louise Morgan testified that she never had any cause for concern with regard to any claim of the plaintiffs immoderate use of alcohol. The witness herself does not drink, is a teetotaler.
The witness expressed no concern with regard to the adequacy of the care accorded to the minor child by the plaintiff father.
This witness never during the life of the marriage saw the plaintiff in an intoxicated state.
The defendant in her testimony verified the date and place of the marriage; that the same has lasted for 13 years, that the plaintiff was employed at Electric Boat for two years prior to the marriage. She described her health as good. She is a high school graduate.
She testified that the plaintiff sometimes disparaged or made inappropriate comments with regard to the fact that the defendant was not better educated.
The defendant was employed at Lawrence and Memorial Hospital prior to the marriage as a senior technical medical records person. She maintained patient records. She started working for Lawrence and Memorial Hospital in May of 1978. She left that position in July of 1997. Her job title changed in 1990. Her position changed to that of coding. Her income decreased. The defendant took a $3.00 hourly cut in her compensation. The defendant enjoyed her old or former position and didn't take the new CT Page 13826 position because she enjoyed so much working with the people in her initial calling.
The defendant worked at her employment up until the time of the birth of the child Noah. At that time she took off four months and returned in January of 1997 and continued to July of 1997.
There was a joint discussion between the plaintiff and the defendant with regard her intention to leave Lawrence and Memorial Hospital due to job stress. In March of 1999 the defendant went to work for Pfizer's. The defendant's job title is at variance with what it was with Lawrence and Memorial. She is now a records specialist at Pfizer. Her hourly compensation is $15.20.
While the defendant was at Lawrence and Memorial, she had a fund there which was funded in part by Lawrence and Memorial. She rolled that over when she changed her position and became associated with Pfizer's. She has been at Pfizer's for 1-1/2 years. A pension plan is offered. She has no vested rights incident thereto yet; that takes at least five years.
The defendant verified the purchase of the Westbrook property in 1995, indicated the down payments that came from the plaintiffs SSIP and testified that she contributed $9,000.00 from two insurance policies which she had in her own right at that time.
The defendant has not always insisted that the Westbrook property be sold. The defendant is desirous of having her claimed share of the equity in the house to be paid to her within one year.
The defendant testified that she and the plaintiff agreed on a policy of trying to save; two accounts were set up, one was for paying bills, which was a joint account, one was for savings.
The demeanor of the defendant during the proceedings was one of her being extremely quiet and reserved. The defendant declined to participate in counseling. The defendant represented that the plaintiff was not happy with her as a wife.
The plaintiff, the defendant testified, felt that she was too family oriented.
The plaintiff wanted the defendant to have interests outside of the home.
The defendant claimed that the plaintiff, in her words, "put her down
The defendant felt that the plaintiff did abuse alcohol over the last CT Page 13827 three years. She mentioned that there were empty beer cans in his truck, a cooler in his vehicle, and that some of the plaintiffs comments to her were inappropriate.
The defendant testified that the plaintiff criticized or voiced criticisms of the defendant in the presence of guests.
The defendant claimed that the plaintiff spent less time at home than what was proper.
The defendant is desirous of there being joint legal custody of the minor child Noah and asks the court to accept her wishes with regard to access orders.
The defendant's position, she having spoken with her supervisors, apparently would now allow her to stay at home two days a week and work from home. The defendant represented that her employer Pfizer would be willing to give her what was called a docking station to do her work at home.
The defendant felt that the minor child could remain in daycare for three days a week.
The minor child's health insurance coverage is incident to the plaintiffs employment and not that of the defendant.
The defendant felt that if in the past the plaintiff had a problem with regard to the immoderate use of alcohol that that has been cured at the present.
The defendant acknowledged that there was a time when she was in New York for several days on a trip and the child was looked after by the plaintiff and that the care and supervision were satisfactory.
No restraining orders were ever issued in this proceeding.
The defendant feels that she was a good wife and mother.
The defendant acknowledged that she never mentioned any alcohol problem to the witness Avallone, the child counseling expert.
The defendant acknowledged that the plaintiff is a competent parent.
As indicated, the defendant during the proceedings was very subdued and many of her responses to counsel or to the court were single words. Apparently there is no hesitancy on the part of the child in going with CT Page 13828 and being in the company of his father.
The defendant acknowledged that there have not been any instances of physical violence to her and no abuse of controlled substances.
A sister to the defendant Susan Morgan of Farmington testified. Her testimony was to the effect that on one occasion she had a conversation with the plaintiff with regard to alcohol and that the plaintiff at that time stated to her that he was drinking too much. Her testimony did not extend beyond that point.
From the exhibits the court makes the following findings.
From Defendant's Exhibit A, a statement from General Dynamics, Electric Boat indicating the status and nature of the plaintiffs salaried retirement plan and information pertaining to a pension and the market value of Mr. Hallisey's Savings and Stock investment Plan as of October 2, 2000. In part the exhibit, which speaks for itself, recites "Mr. Hallisey has been a member of the salary retirement plan since May 16, 1985. The current benefit eared is approximately $899.44 per month, payable at age 65. Mr. Hallisey is also eligible for a pension improvement payable at age 65. The amount of this benefit will be determined based on his age and length of service at termination. The maximum amount payable is $94.00 a month. The market value of Mr. Hallisey's Savings and Stock Investment Plan as of October 2, 2000 was $283,053.27. There is no longer an outstanding loan balance against the same." The plaintiff is age 39, the defendant is age 38.
Defendant's Exhibit B is a series of documents; face sheet is interest rate disclosure with regard to the refinancing of the Westbrook property, and explains all of the various and sundry costs and expenses, points and charges, incident thereto.
Plaintiff's Exhibit 1 is entitled "Hallisey Budget" and sets forth in great detail the respective responsibilities of the parties, the weekly amounts, monthly amounts, quarterly amounts, yearly amounts, as concerns what comes in to the household and what is paid out. Reference is also made to Plaintiffs Exhibit, inappropriately noted as B, a portion of answers to a deposition which indicates in part that the response by the defendant as to one question was to the effect "marriage broke down as a result of lack of respect and a controlling attitude of my husband."
The defendant in answer to another question, Plaintiffs Exhibit C, as to whether or not any action on her part contributed to the breakdown of the marriage, answered and replied. "no". CT Page 13829
On Plaintiffs Exhibit D her response as to the question as to whether or not her spouse was a competent parent, her answer was that he was.
Exhibit offered by the attorney for the minor child, Attorney Sarette Williams, and marked as Child's Exhibit, a Statement from Comprehensive Psychiatric Care, PC, authored by Sara Avallone, LCSW, confirming in the main her testimony on the stand with regard to the child and the issue of daycare.
The health form filed with the court indicates that this is the first marriage for both parties, that the plaintiff husband's education extended through securing a college degree, the wife's education extended through completing high school.
From the respective financial affidavits of the parties, the court finds that the plaintiff is employed as an engineer at General Dynamics, Electric Boat Corporation. His gross weekly wage is $1,200.00, weekly deductions amount to $449.34 including a Contribution of $91.23 to his 401K. His net is $741.14, weekly expenses shown, $867.34, debt shown as $10,725.00.
The plaintiff values the 97 Hunter's Ridge Road property in Westbrook at $200,000.00 with a mortgage of $156,000.00 for a net equity of $44,000.00.
The title of this property now stands in the plaintiffs name alone.
The plaintiff shows a 1982 Chevrolet automobile valued at $800.00 free and clear, a 1993 Pontiac automobile valued at $9,000.00 free and clear. Further, a 1995 Toyota valued at $3,000.00 This includes miscellaneous personal property and furnishings. He as $500.00 in a Charter Oak Federal Credit Union account. He has 26 shares of Pfizer stock valued at $3,500.00. No cash value to life insurance and $283,800.00 being the value of his 401K SSIP.
The defendant's financial affidavit shows that she is employed as a Records Management Specialist for Pfizer, Inc. Her gross weekly wage is $704.00, total deductions, $250.00, net, $454.00. The defendant shows the receipt of $200.00 a week as child support, for a total net weekly income of $654.00.
Her weekly expenses as shown on the affidavit amount to $647.00. She shows debt in the amount of $5,845.00.
The defendant makes reference to the Westbrook property of which she is not presently an owner of record and claims that the total equity therein is $49,000.00. CT Page 13830
Defendant's Exhibit B, the refinancing documents, values the 97 Hunter's Ridge Drive property at $195,000.00 as of February 10, 2000.
No current independent appraisal of the real estate was offered during the pendency of the proceedings.
The defendant shows a 1993 Pontiac motor vehicle valued at $9,000.00; no value is ascribed to personal property, $1,200.00 in Citizen's Bank; 50 shares of Waterhouse Securities valued at $7,140.00; and an unvested Pfizer pension, no value shown.
 Discussion
This is a marriage of 13 years. The parties have been separated for a good many months up to the present time.
Neither party has ever received welfare. The health form indicates that this was he first marriage for both of the parties.
There is only one child, a little 4-year old boy.
In terms of education, the plaintiff husband is much more highly educated than he defendant wife, having one or more graduate college degrees. The wife's education extended through completing high school.
As noted, the plaintiffs age is 39. The defendant's is 38.
Both parties appear to be in good health with no current medical problems of which the court has any knowledge.
The plaintiff has a relatively long term position with General Dynamics, Electric oat going back into the 1980's. His compensation manifestly is considerably greater than that of the defendant.
With regard to the deductions from [us periodic compensation, the court has already noted a substantial weekly contribution to his 401K in the amount of $91.23 weekly.
The defendant's position is much more modest with a net from her weekly wage of $454.00. The child support to date, by virtue of pendente lite orders, has been $200.00 a week.
Apparently there were widely divergent views with regard to how matters of Finance should be handled in the home and this would appear to be one of the principal causes of the breakdown. CT Page 13831
There is little question but that both the plaintiff and the defendant are good, decent, responsible individuals.
There is no realistic or cogent evidence of any present alcohol problem, substance abuse, or violence in this marital union.
Both of the parties appear to have a deep and abiding love and affection for the little boy Noah, age 4, and the court has no hesitancy in coming to the conclusion that both are responsible individuals insofar as the child is concerned.
Both of the parties have been employed during the entire tenure of this marital union.
The plaintiff father appears to be of a more outgoing nature. The defendant mother appearing to be of a very quiet, reserved disposition but a dedicated parent in all respects.
 The Law
The court has considered all of the statutes which apply in matters of this nature which include without limitation Connecticut General Statutes (C.G.S.) § 46b-62 regarding attorney's fees, C.G.S. § 46b-82
regarding alimony and C.G.S. §§ 46b-55, 46b-83, 46b-84 as concerns support.
The court has considered all of the applicable case law that govern the matter.
The court has considered the testimony of the parties, their candor or lack thereof, and all exhibits and the arguments of counsel.
In considering the issue of alimony, the court has considered the length of the marriage, the cause of the dissolution, the age, health, station, occupation, employability, estate and needs of the parties.
The court has considered the standards of living of the parties.
As concerns the one minor child, the court has considered the child's age, moral character, child care practices, emotional ties of each parent to the child, length and intimacy of the association with the parents and the physical and mental health of the child.
The court has considered the-time available as to each parent for the child on a daily basis, the capacity and disposition of both parents to CT Page 13832 give affection and guidance, provide financial security, education and religious training.
The court has considered the respective financial positions of the plaintiff and the defendant, their prospects for future income and opportunities.
The Court enters the following orders.
The plaintiff and the defendant shall share joint legal custody of the minor child Noah.
The parties shall keep one another informed about the minor's daycare accommodations, health care and matters of like nature.
The primary physical custodian of the minor child Noah shall be with the defendant mother.
The father shall have regular visitation access as follows:
Every other weekend from Friday through Monday a.m., one overnight per week on Wednesday, such visits to begin either after daycare or earlier if father's work schedule shall permit. Additionally, father shall have one other day, Monday through Friday, in lieu of daycare from the a.m. until 5:30 p.m. when his work schedule permits.
In order that mother may give the daycare provider notice of the minor child's planned dates of attendance, and so that mother will have notice of father's plans to exercise his access, father shall provide mother a definite monthly schedule no later than the 23rd day of the prior month.
The parties of course may modify these orders when the child is engaged in a further formal educational school setting.
The parties shall share major holidays on an alternating yearly basis. The parties shall split the period from Christmas Eve at 5:00 p.m. through Christmas Day at 5:00 p.m., such that in the even years mother shall have the child 5:00 p.m. on Christmas Eve through 1:00 p.m. on Christmas Day. Father may have the child from 1:00 p.m. Christmas Day through a.m. of the day after Christmas. The access of the parties shall reverse in the odd years.
For the Thanksgiving Day celebration, father shall have access with the child from the proceeding evening after work until 4:00 p.m. in the even years, mother shall have the same rights of access in the odd years. CT Page 13833
For Independence Day, mother shall have access from 7:00 p.m. the day before until 7:00 p.m. July 4th in the even years. Father shall have the same rights of access during the odd years.
The child shall spend all "long weekend" or Monday holidays with the parent who had access the immediate preceding Sunday.
For the summer vacation, the parties shall each be permitted two weeks of vacation with the child, to be taken in individual one-week periods.
The Spring and Winter academic breaks shall alternate yearly when the child is enrolled in a formal school program, such that the mother shall have the child in the even-numbered years, respecting the Spring Break, while the father shall have the same rights of access in the odd years.
The Winter or Christmas Break shall be divided such that the parent with Christmas Eve access shall have the child from the commencement of the break through 1:00 p.m. on Christmas Day with the other parent having access for the remainder of the break.
The mother shall have the child with her for the period 5:00 p.m. Saturday through a.m. on Monday in observance of the Mother's Day weekend. Father shall have the same rights of access with respect to the Father's Day weekend.
This access and visitation schedule is the schedule presented to the court by the attorney for the minor child and the court has therefore adopted the same.
Court orders as to visitation and access can create the opportunity for a relationship, but the responsibility for cultivating a loving, concerned friendship with the child only begins then.
The plaintiff shall pay to the defendant the sum of $147.00 per week as child support pursuant to the guidelines. Said support shall be paid by an Immediate Wage Withholding Order.
The court is mindful of the manner in which the visitation apportions the child's time between the plaintiff and the defendant but is of the view that the support order noted herein is fair and reasonable under the circumstances.
The plaintiff shall pay 50% of the child's unreimbursed, uncovered, medical, dental, optical, ophthalmological logical, orthopedic, orthodontic, pharmaceutical, psycho logical and like expenses including but not limited to co-pays and deductibles. CT Page 13834
The plaintiff shall pay 50% of the child's daycare costs. The plaintiff shall maintain and provide medical, dental and vision insurance coverage now in effect or its equivalent as available through his place of employment for the benefit of the minor child for so long as he has a child support obligation.
Each party may maintain their own individual health insurance coverages at their own individual expense.
The court was not provided with any information as to insurability or the cost hereof as concerns matters of life insurance. The court will direct however that any existing outstanding life insurance maintained by the plaintiff or the defendant shall be continued naming the minor child as sole irrevocable beneficiary until the child attains his majority.
Each party, the plaintiff and the defendant, shall name the other as trustee of the insurance policies for the benefit of the minor child Noah.
The parties shall provide one to the other evidence verifying that the insurance coverage has been continued and is in full force and effect during the required time interval. The plaintiff shall be entitled to take the minor child Noah as an income tax exemption.
Each of the parties, the plaintiff and the defendant, may maintain possession and ownership of any motor vehicle presently standing in their name and hold the other harm less as concerns any debts, taxes or obligations incident thereto.
The plaintiff may retain the 1988 16-foot boat with motor as his sole and separate property.
Each party may keep and retain any existing bank account presently standing in their name.
The parties stipulated to the effect that there were certain items of personal property which were not identified but allegedly agreed to and that the defendant may secure and remove the same from the Westbrook property in a peaceful and timely fashion.
As to the real estate known as 97 Hunter's Ridge Drive in Westbrook, Connecticut, which property of record presently stands in the name of the plaintiff, the court finds that the value thereof predicated upon the exhibit introduced as concerns the refinancing to be $195,000.00, mortgage encumbrance and obligation on the same is $149,000.00, with a CT Page 13835 resultant equity in the amount of $46,000.00.
Mindful of the state of the title, the length of the marriage and the contributions to the Hunter's Ridge Drive property, as well as the property earlier owned by the parties on Ocean Avenue in New London, the plaintiff shall execute and deliver a mortgage deed and note to the defendant in the amount of $20,000.00 payable upon the plaintiffs death, remarriage, sale of the residence, refinancing of the same, his failure to use the property as his residence, or five years from date, whichever first occurs. Said debt shall carry a 6% per annum interest.
43% of the plaintiffs General Dynamics Savings Stock Investment Plan valued as of the date the judgment herein shall be transferred to the defendant by way of a Qualified Domestic Relations Order. The defendant to be responsible for any tax consequences incident thereto.
The defendant shall receive 43% of the plaintiffs General Dynamics retirement plan for salaried employees by way of a Qualified Domestic Relations Order. The defendant shall be named survivor beneficiary of said plan.
The defendant may retain as her sole and separate property her IRA account.
As to the issue of alimony, the plaintiff shall pay to the defendant alimony in the amount of $100.00 per week for a period of two years. The alimony is non-modifiable as to term or amount. The alimony shall terminate sooner upon the death, remarriage or cohabitation by the defendant.
Each party shall be responsible for the debts and obligations listed on their financial affidavits and hold the other harmless therefrom.
The defendant shall be specifically responsible for her debt to Sears, her parents Louise and Raymond Morgan, and counsel, Horvitz and Caisse.
The statement for attorney's fees presented by the attorney for the minor child, by agreement, is to be apportioned equally one-half thereof to each.
The amount of the statement for the attorney for the minor child being $3,500.00; $1,000.00 having been previously paid thereon, leaving a balance of $2,500.00. Each party shall pay $1,250.00.
The court enters no order as to attorney's fees as to either the plaintiff or the defendant and each shall be responsible for their own CT Page 13836 counsel fees.
The plaintiff may retain his Pfizer stock, the same constituting 26 shares valued at
The defendant may retain her Waterhouse Securities (50 shares).
The court grants the relief prayed for, dissolves the marriage on the grounds of irretrievable breakdown and declares the parties to be single and unmarried.
Austin, JTR